**WO**

IN THE UNITED STATES DISTRICT COURT

FOR THE DISTRICT OF ARIZONA

| | |
|---|---|
| Paul Andrew Pope,<br><br>    Plaintiff,<br><br>vs.<br><br>Michael J. Astrue, Commissioner of<br>Social Security,<br><br>    Defendant. | No. CIV 10-524-TUC-GEE<br><br>**ORDER** |

The plaintiff filed this action for review of the final decision of the Commissioner for Social Security pursuant to 42 U.S.C. §405(g). The Magistrate Judge presides over this case pursuant to 28 U.S.C. § 636(c) having received the written consent of both parties. *See* FED.R.CIV.P. 73.

The court concludes the final decision of the Commissioner must be reversed. The Commissioner's decision is neither supported by substantial evidence nor free from legal error. The case will be remanded for further proceedings.

PROCEDURAL HISTORY

On May 1, 2006, Pope filed an application for disability insurance benefits and supplemental security income. (Tr. 215). He alleged disability beginning on February 1, 2005, due to hepatitis C and "arthritis." (Tr. 241). His claim was denied initially (Tr. 128-31) and

upon reconsideration. (Tr. 132-38). Pope requested review and appeared with counsel at a hearing before Administrative Law Judge (ALJ) Lauren R. Mathon on November 14, 2007. (Tr. 40, 140). In her decision, dated April 7, 2008, the ALJ found Pope was not disabled. (Tr. 109-17).

Pope appealed to the Appeals Council which granted review, vacated the decision of the ALJ, and remanded for further proceedings. (Tr. 120-22). Pope appeared with counsel at a second hearing before Administrative Law Judge (ALJ) Lauren R. Mathon on October 26, 2009. (Tr. 64). In her decision, dated November 24, 2009, the ALJ again found Pope was not disabled. (Tr. 16-32).

Pope appealed, but the Appeals Council denied review making the decision of the ALJ the final decision of the Commissioner. (Tr. 1-4); *Bass v. Social Sec. Admin.*, 872 F.2d 832, 833 (9th Cir. 1989). Pope subsequently filed the instant action appealing the Commissioner's final decision. *See* 20 C.F.R. § 422.210(a).

Claimant's Work History and Medical History

Pope left school without a high school diploma after failing to pass the seventh grade three times. (Tr. 71). He worked in a number of custodial, landscape, and labor positions staying 2-3 years at each job. (Tr. 273, 688). He states that most jobs ended because he missed too many days or because of past alcohol problems. (Tr. 688). At his last job, Pope worked as a public school custodian. (Tr. 274). In 2005, he quit work because of pain in his back, arms, and hands. (Tr. 72). His supervisor tried to transfer him to a more sedentary administrative position, but Pope found he was unable to fill out the paperwork. (Tr. 73). He explained: "I couldn't spell. I couldn't write very well." (Tr. 73).

In April of 2005, Pope sought treatment from Sam E. Moussa, M.D., for severe fatigue. (Tr. 667-68). Pope was found to have the Hepatitis C antibody, but Moussa found no sign of chronic liver disease. *Id*. Moussa ordered more tests and a liver biopsy. *Id*.

In August of 2006, M. David Ben-Asher, M.D., Pope's primary care physician, completed a Medical Source Statement of Ability to do Work-Related Activities (Physical). (Tr. 718-20). Ben-Asher diagnosed chronic low back pain. *Id.* He opined that Pope could lift 20 pounds occasionally and 10 pounds frequently. *Id.* He could stand or walk "[a]t least 2 hours but less than 6 hours in an 8 hour day." He had no sitting limitations. *Id.* He should never climb and only occasionally balance, stoop, kneel, or crouch. *Id.* He should not work with or around chemicals, dust, fumes, gases, or excessive noise. *Id.*

In August of 2006, Noelle Rohen, Ph.D., performed a psychological evaluation for the Arizona DES Disability Determination Service. (Tr. 687-97). Rohen offered the following summary: Axis I: 296.32 Major Depressive Disorder, Recurrent, Moderate; 300.00 Anxiety Disorder NOS; 304.00 Opioid Dependence on Methadone Maintenance; R/O 312.30 Impulse-control Disorder NOS; Axis II: V62.89 Borderline Intellectual Functioning; Axis III: Defer to medical records. *Id.* She found Pope's ability to carry out detailed instructions to be markedly limited. *Id.* She found him moderately limited in his performance of various tasks related to understanding, remembering, and carrying out instructions; sustaining concentration and pace; and social interaction. *Id.*

In August of 2006, Paul Tangeman, Ph. D., reviewed the medical record and completed a Psychiatric Review Technique form for the Arizona DES Disability Determination Service. (Tr. 699-712). He diagnosed an affective disorder (depressive syndrome), anxiety-related disorder (NOS), and substance addiction disorder. *Id.* Tangeman proceeded to complete a Mental Residual Functional Capacity Assessment. (Tr. 713-15). He found Pope markedly limited in his ability to carry out detailed instructions. *Id.* He found Pope moderately limited in areas of "understanding and memory," "concentration and persistence," and "social interaction." *Id.* He concluded that Pope "retains the ability to perform simple work activities, with few social demands." *Id.*

In September of 2006, Pope was examined by Jeri B. Hassman, M.D., for the Arizona DES Disability Determination Services. (Tr. 741-48). Hassman diagnosed Hepatitis C and status post traumatic amputation, right thumb; GERD; and complaints of low back pain and

joint pain in the fingers. *Id*. Hassman found no limitations lasting for 12 continuous months. *Id*.

In October of 2006, Pope was referred to Mark J. Iannini, M.D., for evaluation of joint pain. (Tr. 763-65). Iannini assessed generalized osteoarthirits, bilateral carpal tunnel syndrome, bilateral lateral epicondylitis, and chronic pain syndrome. *Id*. Pope returned to Iannini for a follow-up in October of 2007. (Tr. 833). Pope reported good pain control with OxyContin. *Id*. Iannini prescribed a Xylocaine injection, continued pain management with Ben-Asher, the primary care physician, and follow-up on an as needed basis. *Id*.

In October of 2008, Eugene Campbell, Ph. D., reviewed the medical record for the Arizona DES Disability Determination Services and completed a Psychiatric Review Technique form. (Tr. 880-93). He diagnosed an affective disorder (depressive d/o). *Id*. He found only mild limitation in activities of daily living; social functioning; and concentration, persistence, or pace. *Id*.

In September of 2008, John B. Kurtin, M.D., reviewed the record and completed a Physical Residual Functional Capacity Assessment for the Arizona DES Disability Determination Services. (Tr. 865-72). Kurtin found Pope could lift or carry 20 pounds occasionally and 10 pounds frequently. *Id*. He could stand or walk for at least 2 hours and sit for about 6 hours in an 8-hour day. *Id.* He should never climb ramps, stairs, ladders, ropes, or scaffolds. *Id*. He could occasionally balance, stoop, kneel, or crouch. *Id*.

In April of 2009, Ben-Asher completed a Physical Residual Functional Capacity Assessment. (Tr. 999). Ben-Asher opined that Pope could stand for less than one hour and sit for one to two hours. *Id*. With three formal breaks, Pope could stand for less than two hours and sit for less than six hours. *Id*. He was markedly limited in his ability to bend, climb and squat. *Id*.

In April of 2009, Bonnie Hoff, nurse practitioner, completed a Mental Residual Functional Capacity Assessment. (Tr. 997-98). Hoff opined that Pope was moderately limited in 14 mental categories in the areas of understanding and memory, concentration and persistence, social interaction, and adaptation. *Id*. She found 10 marked mental health

impairments including memory impairment, difficulty concentrating or thinking, and recurrent severe panic attacks. *Id.*

In May of 2009, James Armstrong, Ph.D. conducted a psychiatric examination for the Arizona DES Disability Determination Services. (Tr. 937-43). Armstrong's diagnostic impression is as follows:

> V62.89 Borderline intellectual functioning [Axis II] [IQ=71-84 according to DSM IV; SAIA-III manual lists borderline range of IQ as 70-79]
>
> 294.9 Cognitive Disorder NOS
>
> 305.00 Alcohol Abuse. Said to be in remission since age 32
>
> 311 Depressive Disorder NOS. Moderate
>
> 307.89 Pain Disorder, Associated with Both Psychological Factors and a General Medical Condition.

*Id.* Armstrong found marked impairment in Pope's ability to understand and remember complex instructions; carry out complex instructions; and make judgments on complex work-related decisions. *Id.*

On October 26, 2009, Pope appeared with counsel at a hearing before ALJ Lauren R. Mathon. (Tr. 64). Pope testified that he left school after failing to pass the seventh grade three times. (Tr. 71). When he was 15 or 16, he was thrown from a moving vehicle onto his head. (Tr. 72). He worked digging ditches, doing landscaping, and as a custodian. (Tr. 72). He eventually quit his job as a custodian because of pain in his back, arms, and hands. *Id.* He was given a job ordering supplies but he found he could not do the paperwork. (Tr. 73).

In addition to his physical impairments, he also suffers from depression. (Tr. 74). He has panic attacks about three times a week. (Tr. 75). He also has problems with his anger. (Tr. 76).

Pope takes OxyContin and Percocet for his pain. (Tr. 78). On a good day he can do light housework for five minutes at a time. (Tr. 77-78). On a bad day he takes a hot bath to relax his back. (Tr. 78).

Vocational expert Kathleen McAlpine testified that Pope's previous jobs were medium unskilled. (Tr. 87). Assuming Kurtin's assessment of September 2008 was correct, Pope could work as an assembler and a wrapper. (Tr. 87-88). Assuming Armstrong's assessment were

correct, Pope could work as a surveillance systems monitor as well. (Tr. 89-90). Assuming Ben-Asher's assessment of August 2006 was correct, Pope could perform the job of surveillance systems monitor. (Tr. 90). Assuming Hoff's assessment or Ben-Asher's assessment of April 2009 was correct, Pope could not maintain employment. (Tr. 91).

In her decision, dated November 24, 2009, the ALJ again found Pope was not disabled. (Tr. 16-32). Pope appealed to the Appeals Council and submitted additional medical records from Michael A. Badruddoja, M.D., and Abhay Sanan, M.D. who work at the Center for Neurosciences. (Tr. 1000-26); (Doc. 23, p. 8).

In February of 2010, Pope sought treatment for "bilateral hand tingling and numbness" which began in approximately 1998. (Tr. 1000). Sanan noted that Pope's symptoms have progressively worsened and they are exacerbated by repetitive movements. (Tr. 1014). Sanan gave his diagnosis as carpal tunnel syndrome and hyperflexia. (Tr. 1015). He recommended carpal tunnel release but "held off on scheduling the surgery" until a cervical MRI could be performed. *Id*.

The Appeals Counsel considered the additional evidence, but denied review. (Tr. 1).

CLAIM EVALUATION

Social Security Administration (SSA) regulations require that disability claims be evaluated pursuant to a five-step sequential process. 20 C.F.R. §§ 404.1520, 416.920; *Baxter v. Sullivan,* 923 F.2d 1391, 1395 (9th Cir. 1991). The first step requires a determination of whether the claimant is engaged in substantial gainful activity. 20 C.F.R. §§ 404.1520(a)(4), 416.920(a)(4). If so, then the claimant is not disabled, and benefits are denied. *Id.* If the claimant is not engaged in substantial gainful activity, the ALJ proceeds to step two which requires a determination of whether the claimant has a "medically severe impairment or combination of impairments." *Id*.

In making a determination at step two, the ALJ uses medical evidence to consider whether the claimant's impairment more than minimally limits or restricts his or her "physical or mental ability to do basic work activities." *Id*. If the ALJ concludes the impairment is not

severe, the claim is denied. *Id.* Upon a finding of severity, the ALJ proceeds to step three which requires a determination of whether the impairment meets or equals one of several listed impairments that the Commissioner acknowledges are so severe as to preclude substantial gainful activity. 20 C.F.R. §§ 404.1520(a)(4), 416.920(a)(4); 20 C.F.R. Pt. 404, Subpt. P, App.1. If the claimant's impairment meets or equals one of the listed impairments, then the claimant is presumed to be disabled, and no further inquiry is necessary. *Ramirez v Shalala,* 8 F.3d 1449, 1452 (9th Cir. 1993). If the claimant's impairment does not meet or equal a listed impairment, evaluation proceeds to the next step.

The fourth step requires the ALJ to consider whether the claimant has sufficient residual functional capacity[1] (RFC) to perform past work. 20 C.F.R. §§ 404.1520(a)(4), 416.920(a)(4). If yes, then the claim is denied. *Id.* If the claimant cannot perform any past work, then the ALJ must move to the fifth step which requires consideration of the claimant's RFC to perform other substantial gainful work in the national economy in view of claimant's age, education, and work experience. 20 C.F.R. §§ 404.1520(a)(4); 416.920(a)(4).

In determining whether the claimant retains the ability to perform other work, the ALJ may refer to the Medical Vocational Guidelines ("the grids") promulgated by the SSA. *See* 20 C.F.R. Pt. 404, Subpt. P, App.2; *Desrosiers v. Secretary of Health and Human Services,* 846 F.2d 573, 576-577 (9th Cir. 1988). The grids categorize jobs according to their exertional requirements such as sedentary work, light work, or medium work. *Tackett v. Apfel*, 180 F.3d 1094, 1101 (9th Cir. 1999). The grids calculate whether or not the claimant is disabled based on the claimant's exertional ability, age, education, and work experience. *Id.* The grids are a valid basis for denying claims where they completely and accurately describe the claimant's abilities and limitations. *Id.* at 1101-02. If the claimant has only exertional limitations, the claim may be resolved based only on the grids. *Lounsburry v. Barnhart*, 468 F.3d 1111, 1115 (9th Cir. 2006).

---

[1] Residual functional capacity is defined as that which an individual can still do despite his or her limitations. 20 C.F.R. §§ 404.1545, 416.945.

1  If the claimant has significant non-exertional limitations, the grids do not apply. *Penny v. Sullivan,* 2 F.3d 953, 958-959 (9th Cir.1993). "Non-exertional limitations are limitations that do not directly affect a claimant's strength." *Burkhart v. Bowen*, 856 F.2d 1335, 1340 (9th Cir. 1988). Mental limitations, for example, are non-exertional. *Id.* at 1340-41. If significant non-exertional limitations prevent the claimant from performing the full range of work in any exertional category, the ALJ must take the testimony of a vocational expert to deny the claim. *Id.* at 1341.

If the claimant has both exertional and non-exertional limitations, the ALJ must consult the grids first before considering the testimony of a vocational expert at step five. *Lounsburry v. Barnhart*, 468 F.3d 1111, 1115 (9th Cir. 2006). If the grids direct a finding of disability, that finding must be adopted by the Commissioner. *Lounsburry,* 468 F.3d at 1116.

### The ALJ's Findings

At step one of the disability analysis, the ALJ found Pope "has not engaged in substantial gainful activity since February 1, 2005, the alleged onset date . . . ." (Tr. 19). At step two, she found Pope has "the following severe impairments: back disorder resulting in chronic back pain; hepatitis C; status post partial amputation of right thumb; cognitive disorder; depressive disorder . . . ." (Tr. 19). At step three, the ALJ found Pope's impairments did not meet or equal the criteria for any impairment found in the Listing of Impairments, Appendix 1, Subpart P, of 20 C.F.R., Part 404. (Tr. 23). The ALJ then analyzed Pope's residual functional capacity (RFC). (Tr. 24). She found Pope "has the residual functional capacity to lift and/or carry 10 pounds frequently and 20 pounds occasionally; stand and/or walk (with normal breaks) for at least two hours in an eight-hour workday; sit (with normal breaks) for about six hours in an eight hour day. . . ." (Tr. 24-25). She further found Pope "has certain mental impairments including a marked restriction in the ability to understand and remember and carry out complex instructions." (Tr. 25). At step four, the ALJ found Pope could not perform his past relevant work. (Tr. 30). At step five, the ALJ found, based on the testimony of the vocational expert that Pope could work as an assembler, wrapper, or surveillance systems monitor. (Tr. 31).

## STANDARD OF REVIEW

An individual is entitled to disability benefits if he or she demonstrates, through medically acceptable clinical or laboratory standards, an inability to engage in substantial gainful activity due to a physical or mental impairment that can be expected to last for a continuous period of at least twelve months. 42 U.S.C. §§ 423(d)(1)(A), 1382c(a)(3)(A). "[A] claimant will be found disabled only if the impairment is so severe that, considering age, education, and work experience, that person cannot engage in any other kind of substantial gainful work which exists in the national economy." *Penny v. Sullivan,* 2 F.3d 953, 956 (9th Cir. 1993) (*quoting Marcia v. Sullivan,* 900 F.2d 172, 174 (9th Cir. 1990)).

The findings of the Commissioner are meant to be conclusive. 42 U.S.C. §§ 405(g), 1383(c)(3). The decision to deny benefits "should be upheld unless it contains legal error or is not supported by substantial evidence." *Orn v. Astrue*, 495 F.3d 625, 630 (9th Cir. 2007). Substantial evidence is defined as "such relevant evidence as a reasonable mind might accept as adequate to support a conclusion." *Id.* It is "more than a mere scintilla but less than a preponderance." *Id.*.

"Where evidence is susceptible to more than one rational interpretation, the ALJ's decision should be upheld." *Orn*, 495 F.3d at 630. "However, a reviewing court must consider the entire record as a whole and may not affirm simply by isolating a specific quantum of supporting evidence." *Id.*

In evaluating evidence to determine whether a claimant is disabled, the opinion of a treating physician is entitled to great weight. *Ramirez v. Shalala,* 8 F.3d 1449, 1453-54 (9th Cir. 1993). The Commissioner may reject a treating physician's uncontradicted opinion only if he sets forth clear and convincing reasons for doing so. *Lester v. Chater*, 81 F.3d 821, 830 (9th Cir. 1995). If the treating physician's opinion is contradicted by another doctor, the Commissioner may reject that opinion only if he provides specific and legitimate reasons supported by substantial evidence in the record. *Lester,* 81 F.3d at 830. No distinction is drawn "between

a medical opinion as to a physical condition and a medical opinion on the ultimate issue of disability." *Rodriguez v. Bowen*, 876 F.2d 759, 761 n.7 (9th Cir. 1989).

"The opinion of an examining physician is, in turn, entitled to greater weight than the opinion of a non[-]examining physician." *Lester v. Chater*, 81 F.3d 821, 830 (9th Cir. 1996). "[T]he Commissioner must provide 'clear and convincing' reasons for rejecting the uncontradicted opinion of an examining physician." *Id.* "[T]he opinion of an examining doctor, even if contradicted by another doctor, can only be rejected for specific and legitimate reasons that are supported by substantial evidence in the record." *Id.* at 830-31.

"Where medical reports are inconclusive, questions of credibility and resolution of conflicts in the testimony are functions solely of the [Commissioner]." *Magallanes,* 881 F.2d 747, 751 (9th Cir. 1989) (punctuation omitted). The Commissioner's finding that a claimant is less than credible, however, must have some support in the record. *See Light v. Social Security Administration,* 119 F.3d 789 (9th Cir. 1997).

The ALJ need not accept the claimant's subjective testimony of disability, but if she decides to reject it, "she must provide specific, cogent reasons for the disbelief." *Lester,* 81 F.3d at 834. "Unless there is affirmative evidence showing that the claimant is malingering, the Commissioner's reasons for rejecting the claimant's testimony must be clear and convincing." *Id.* "General findings are insufficient; rather, the ALJ must identify what testimony is not credible and what evidence undermines the claimant's complaints." *Id.*

DISCUSSION

Pope argues the decision of the ALJ is not supported by substantial evidence because (1) she improperly discounted his non-exertional limitations including his manual dexterity and mental limitations; (2) she improperly calculated the number of available jobs; and (3) she failed to account for the reduction in occupational base caused by Pope's mental limitations. He further argues that (4) remand is required to allow the ALJ to review the newly submitted evidence. The court finds the ALJ's evaluation of Pope's manual dexterity is not supported by

substantial evidence and remand is necessary for the ALJ to review newly submitted evidence. The court does not reach Pope's alternative arguments.

The record before the ALJ indicates that Pope sought evaluation and treatment from Mark J. Iannini, M.D., for joint pain in 2006 and 2007. (Tr. 763-65). Iannini assessed generalized osteoarthirits, bilateral carpal tunnel syndrome, bilateral lateral epicondylitis, and chronic pain syndrome. *Id*.

The ALJ, however, discounted Pope's allegation of manual impairment because he testified that he continues to drive a manual transmission vehicle and there was "no evidence of follow-up examination or treatment with respect to the complaints of joint pain. . . ." (Tr. 26). The fact that the claimant voluntarily ceases medical treatment is some evidence that the impairment is no longer severe. *See Fair v. Bowen*, 885 F.2d 597, 603 (9th Cir. 1989). Accordingly, the ALJ concluded that Pope does not suffer from a manual impairment.

After the ALJ issued her report, however, Pope sought additional treatment from Michael A. Badruddoja, M.D., and Abhay Sanan, M.D. for "bilateral hand tingling and numbness" (Tr. 1000-26); (Doc. 23, p. 8). Sanan noted Pope's hand symptoms have progressively worsened and are exacerbated by repetitive movements. (Tr. 1014). Sanan gave his diagnosis as carpal tunnel syndrome and hyperflexia. (Tr. 1015). He recommend carpal tunnel release but "held off on scheduling the surgery" until a cervical MRI could be performed. *Id*.

Based on these new medical records, the court concludes that the ALJ's decision to discount Pope's allegation of manual impairment was not based on substantial evidence. Contrary to the ALJ's assumption, Pope's joint problems were not in remission. In fact, they were getting progressively worse. The court is aware that it is somewhat problematic to evaluate the ALJ's decision based on information that was placed in the record almost one year after her decision was issued. (Tr. 4, 32). The Appeals Council, however, was apprised of the new records, and accordingly, this court is permitted to consider it. (Tr. 1); *Harman v. Apfel*, 211 F.3d 1172, 1180 (9th Cir. 2000) ("We properly may consider the additional materials because the Appeals Council addressed them in the context of denying Appellant's request for review.").

The Commissioner argues this court cannot consider evidence submitted for the first time to the Appeals Council when evaluating the decision of the ALJ. (Doc. 26) He further argues remand to consider new evidence is only permitted pursuant to 42 U.S.C. § 405(g) which requires a finding of good cause and materiality (Doc. 26) (*citing Angst v. Astrue*, 351 Fed.Appx. 227, 229 (9th Cir. 2009) (Rymer, J., concurring) (unpublished). This court acknowledges that the case law on this issue is somewhat unsettled in the Ninth Circuit. *Contrast Harman v. Apfel*, 211 F.3d 1172, 1180 (9th Cir. 2000) *with Mayes v. Massanari*, 276 F.3d 453, 461, n.3 (9th Cir. 2001). Accordingly, the court finds, in the alternative, that remand is appropriate pursuant to 42 U.S.C. § 405(g).

Section 405(g) permits the court to "order additional evidence to be taken before the Commissioner of Social Security, but only upon a showing that there is new evidence which is material and that there is good cause for the failure to incorporate such evidence into the record in a prior proceeding. . . ." 42 U.S.C. § 405(g). "To be material under section 405(g), the new evidence must bear directly and substantially on the matter in dispute." *Mayes*, 276 F.3d at 462 (punctuation modified). Moreover, the claimant "must additionally demonstrate that there is a reasonable possibility that the new evidence would have changed the outcome of the administrative hearing." *Id*. "To demonstrate good cause, the claimant must demonstrate that the new evidence was unavailable earlier." *Id*. at 463.

The additional medical evidence is material and good cause exists for the delay. The evidence is material because it bears directly on Pope's manual impairment, which the ALJ believed was not significant. The new evidence, to the contrary, indicates that Pope still suffers from some degree of manual impairment which is exacerbated by repetitive movement. And, Pope's manual impairment must be properly evaluated because two of the three jobs that the vocational expert suggested Pope could still perform, assembler of eye glasses and wrapper, require repetitive fine motor skills. *See Todman v. Astrue*, 2009 WL 874222 (S.D.N.Y. 2009) (noting that the jobs of assembler and electric sealing machine operator "require repetitive fingering and handling"); *Maldonado v. Mathews*, 424 F.Supp. 301, 305 (E.D.N.Y. 1976) (describing the jobs of assembler, polisher, buffer, packer or wrapper as "unskilled, repetitive.").

The court further finds good cause for not having offered the evidence earlier. In the records themselves, Sanan states that Pope's symptoms have "progressively worsened." (Tr. 1014). Accordingly, an examination taken a year earlier, before the ALJ issued her opinion, would not have reflected the same degree of impairment that is indicated in the records.

The court finds in the alternative that this case should be remanded to the Commissioner of Social Security for consideration of new medical evidence pursuant to 42 U.S.C. § 405(g).

IT IS ORDERED that the final decision of the Commissioner is reversed and the case is remanded to the Commissioner of Social Security for consideration of the supplemental medical records.

The Clerk of the Court is instructed to enter judgment accordingly and close this case.

DATED this 15th day of September, 2011.

/s/ Glenda E. Edmonds
Glenda E. Edmonds
United States Magistrate Judge